IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONWIDE INSURANCE COMPANY OF AMERICA, )<br><br>Plaintiff, )<br>v. )<br>)<br>BRUCE A. WADSWORTH; TRAVIS HALL, )<br>EXECUTOR OF THE ESTATE OF )<br>DONALD R. HALL; LIGONIER VALLEY )<br>POLICE DEPT.; DANIEL DORAZIO; )<br>MATTHEW E. SHERER; LOYALHANNA )<br>ASSOC.; THOMAS J. KOKOSKA; )<br>LIGONIER LANES, INC. d/b/a WICKED )<br>GOOGLY, )<br>)<br>Defendants. ) | Civil Action No. 23-1682<br>Judge Nora Barry Fischer |

**MEMORANDUM OPINION**

**I.  INTRODUCTION**

Plaintiff, Nationwide Insurance Company of America ("Nationwide") brings this declaratory judgment action seeking a determination as a matter of law that it owes no duty to either defend or indemnify its insured, Defendant Bruce A. Wadsworth ("Wadsworth"), in an underlying personal injury action ("Underlying Action") filed after a tragic motor vehicle accident that resulted in the death of the intoxicated driver, Donald R. Hall ("Hall").  (Docket No. 1).[1] Presently before the Court is Plaintiff's motion for summary judgment on this coverage issue (Doc. No. 58).  The parties are properly before this Court under its diversity jurisdiction, 28 U.S.C. §§

---

[1] The additional defendants in the action *sub judice* are defendants in the Underlying Action and are named by Plaintiff "solely to ensure that all indispensable parties and all persons who have or claim any interest that would be affected by the declaration are made parties to this action or proceeding."  (Docket No. 1 at ¶ 11).

1332, the matter has been fully briefed and neither party has requested oral argument. (Docket Nos. 57-59, 62 and 65). After careful consideration of the parties' positions, and for the following reasons, Plaintiff's motion for summary judgment (Docket No. 58) will be granted.

## II. FACTUAL AND PROCEDURAL BACKGROUND

As set forth in Plaintiff's Complaint and in the Underlying Complaint (Docket Nos. 1 through 1-3), the Underlying Action filed with this Court at Civil Action No. 22-1665 alleges that:

On November 2, 2020, Hall became observably intoxicated at the Ligonier Lanes establishment, and drove himself to the home of a woman - where he caused a disturbance and she called 911 for assistance. The Ligonier Valley Police Department officers called to the scene found Hall in his vehicle, and on a preliminary breath test his blood alcohol level was found to be more than twice the legal driving limit. The police officers relocated Hall's vehicle to Barb's Country Store, handcuffed Hall and placed him into a police vehicle. They then telephoned Wadsworth, to whom Hall was known, requesting that Wadsworth come to pick up Hall at the Ligonier Sheetz gas station to which the officers transported Hall. Wadsworth did so. The officers then (a) advised Wadsworth that Hall was severely intoxicated and should not drive until the following morning, and (b) released Hall (and his car keys) to Wadsworth's custody, directing Wadsworth to keep him at Wadsworth's own home overnight. Wadsworth, having agreed with those directions, nonetheless drove Hall to his vehicle, returned his keys, and departed, whereupon Hall began to operate his automobile. Within approximately one-third mile, Hall drove at a high speed partially off the berm of the roadway, failed to navigate a curve and crashed his car into one or more trees. Hall was critically injured and subsequently died of the multiple injuries sustained. Count VII of the Underlying Complaint asserts a claim for negligence against Wadsworth, alleging that he breached a duty of care in "furnish[ing] the keys to a visibly and noticeably intoxicated

motor vehicle operator, placing Hall in an unreasonably dangerous situation where his peril was reasonably foreseeable." (Docket No. 1 at ¶¶ 15-31; Docket Nos. 1-2 and 1-3 (Initial and Amended Complaints in Underlying Action)).  *See also* Docket No. 56 at ¶ 7.

At the time of the accident, Wadsworth and his spouse, Susan Wadsworth, were the insureds under a Nationwide Homeowners Policy number 58 37 HR 005956 ("Policy") which included personal liability coverage with limits of $300,000 per occurrence. The Policy also contained certain exclusions – including a motor vehicle liability exclusion – of claims from coverage. (Docket No. 1 at ¶ 14; Docket No. 1-1).  *See also* Docket No. 57-3 (Certified copy of Policy).  The relevant Policy provisions are set forth in Section III directly below.

Nationwide initially denied coverage by letter dated October 25, 2022 (Docket No. 62-1) and again denied coverage by letter of September 6, 2023 stating that Hall's injuries were incurred "in the operation and use of a motor vehicle" and fell within the Policy exclusion. (Docket Nos. 1-4, 62-1 and 62-2).  On September 21, 2023, Nationwide filed its Complaint in Declaratory Judgment (Docket No. 1) seeking a determination that it is not required to defend or indemnify Wadsworth against the claims of the Underlying Action.  Defendant's Answer with Counterclaim was timely filed, as was Plaintiff's Answer thereto. (Docket Nos. 36 and 40).  Said Answer with Counterclaim was amended (Docket No. 36) and the parties stipulated to dismissal of its claim of bad faith and the related striking of allegations related to the existence/breach of fiduciary duty by Nationwide. (Docket No. 37).  On June 5, 2024, Plaintiff filed the pending motion, and the Concise Statement of Material Facts and Responsive Counterstatements were filed shortly thereafter. (Docket Nos. 56-59, 63 and 64). Plaintiff's motion for summary judgment is ripe for disposition.

### III. RELEVANT POLICY PROVISIONS

The Policy issued by Nationwide to Wadsworth and in place at the time of the incident provides for Personal Liability coverage as follows:

SECTION II – LIABILITY COVERAGES

**A.** Coverage E – Personal Liability. If a claim is made or a suit is brought against an "insured" for damages due to an "occurrence" resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property, we will [provide indemnification and defense as further specified].[2]

SECTION II – EXCLUSIONS

**A. 1.** Coverages E and F do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle" is [listing circumstances of exclusion, including if the vehicle is registered or required to be registered for use on public roads or property].[3]

DEFINITIONS

Under the Policy's Definitions, subsection **2.a.**, "Motor Vehicle Liability" – together with "Aircraft", "Hovercraft" and "Watercraft" Liability – is defined as:

---

[2] Definition subsection **11** defines "Occurrence" as "an accident . . . which results, during the policy period, in: (a) 'Bodily injury', or (b) 'Property damage'".

As Plaintiff notes, although "arising out of" is not defined in the Policy, the Pennsylvania Supreme Court has observed that it means "causally connected with, not proximately caused by." *Nat'l Liab. & Fire Ins. Co. v. Brimar Transit, Inc.*, No. 22-2565, 2023 WL 6172886, at *3 (3d Cir. Sept. 22, 2023) (quoting *Mfrs. Cas. Ins. Co. v. Goodville Mut. Cas. Co.*, 170 A.2d 571, 573 (Pa. 1961)); see also *Alea London Ltd. v. Woodlake Mgmt.*, 365 F. App'x 427, 429 (3d Cir. 2010) ("The term 'arising out of' is interpreted in terms of 'but for' causation.") (citing *Madison Constr. Co. v. Harleysville Mut. Ins Co.*, 735 A.2d 100, 109-10 (Pa. 1999)). (Docket No. 59 at 5).

[3] As Plaintiff duly notes, there is no dispute that Hall was operating a "motor vehicle" – further defined in subsection **10** as including "a self-propelled land or amphibious vehicle" - which was or should have been so registered at the time of the occurrence. (Docket No. 59 at 4). *Cf. n. 4, infra.*

> Liability for 'bodily injury' or 'property damage' arising out of the:
>
> (1) *Ownership of such vehicle or craft by an "insured"*;
>
> (2) Maintenance, occupancy, operation, use, loading or unloading of *such* vehicle or craft *by any person*;
>
> (3) Entrustment of *such* vehicle or craft *by an "insured" to any person*;
>
> (4) Failure to supervise or negligent supervision of any person *involving such* vehicle or craft *by an "insured"; or*
>
> (5) Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving *such* vehicle or craft.

(Docket No. 1 at Section IV; Docket No. 57-3) (emphasis added).[4]

## IV. STANDARDS OF REVIEW

### A. General Summary Judgment Standard

Summary judgment may only be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted. Fed. R. Civ. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

---

[4] Definition subsection **2(b)** goes on to further define, for purposes of the vehicle or craft liability provisions above, the terms "aircraft", "watercraft" and "hovercraft". It defines "motor vehicle" simply by reference to Definition subsection **10** (*i.e.*, including a "self-propelled land . . . vehicle").

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party.  *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby,* 477 U.S. 242, 248–49 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.,* 142 F.3d 639, 643 n. 3 (3d Cir. 1998).  The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment.  Only a dispute over a material fact – that is, a fact that would affect the outcome of the suit under the governing substantive law – will preclude the entry of summary judgment.  *Liberty Lobby*, 477 U.S. at 248.

### B. Duty to Defend or Indemnify

"In actions arising under an insurance policy, [Pennsylvania] courts have established a general rule that it is a necessary prerequisite for the insured to establish that his claim falls within the coverage provided by the insurance policy." *Erie Ins. Grp. v. Catania*, 95 A.3d 320, 322 (Pa. Super. 2014) (citing *McEwing v. Lititz Mut. Ins. Co.*, 77 A.3d 639, 646 (Pa. Super. 2013) (citations omitted)).  It is the function of the Court to interpret an insurance contract.  *Amer. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011).  See also *Whole Enchilada, Inc. v. Travelers Prop. Cas. Co. of Am.*, 581 F. Supp. 2d 677, 689 (W.D. Pa. 2008) ("Under Pennsylvania law, interpretation of an insurance contract is a question of law that is properly decided by the court."). "The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument." *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983).

A court must first "read the policy as a whole and construe terms according to their plain meaning." *Vitamin Energy, LLC v. Evanston Ins. Co.*, 22 F.4th 386, 392 (3d Cir. 2022) (quotation omitted). "Words of common usage must be 'construed in their natural, plain, and ordinary sense . . . .'" *Amer. Auto. Ins. Co.*, 658 F.3d at 320 (quoting *Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co.*, 432 F. Supp. 2d 488, 495 (E.D. Pa. 2006) (citing *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 108 (Pa. 1999)).[5] "Where the language of an insurance policy is clear and unambiguous, a court must enforce that language." *Amer. Auto. Ins. Co.*, 658 F.3d at 321; *see also Pennsylvania Manufacturers' Ass'n Insurance Co. v. Aetna Casualty & Surety Insurance Co.*, 233 A.2d 548, 551 (Pa. 1967). And "[w]here a provision of a policy is ambiguous, [it] is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Standard Venetian Blind,* 469 A.2d at 566; *see also Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 558 (3d Cir. 2008) (quotation omitted).

As Defendant correctly observes:

> To determine whether a policy provision is ambiguous, a court 'must examine the questionable term or language in the context of the entire policy and decide whether the contract is "reasonably susceptible of different constructions and capable of being understood in more than one sense." *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997) (quoting *Gamble Farm Inn, Inc. v. Selective Ins. Co.*, 440 Pa. Super. 501, 656 A.2d 142, 143-44 (1995). "Where there is only one reasonable interpretation of a contract, that interpretation controls because straightforward language in an insurance policy should be given its natural meaning."' *Viera v. Life Ins. Co. of N. Am.* , 642 F.3d 407, 419-20 (3d Cir. 2011) (quoting *Lawson v. Fortis Ins. Co.* , 301 F.3d 159, 162 (3d Cir. 2002) ). The 'polestar' of the court's inquiry is the language of the policy. *Madison Construction Company v. Harleysville Mutual Insurance Company*, 735 A.2d 100, at 106.

---

[5] *See also Allstate Vehicle & Prop. Ins. Co. v. Scott*, 450 F.Supp.3d 230, 236–37 (N.D.N.Y. 2020) ("Contract language is unambiguous if it 'provides a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion.'") (quoting *Atl. Cas. Ins. Co. v. Value Waterproofing, Inc.*, 918 F. Supp. 2d 243, 253 (S.D.N.Y. 2012), *aff'd sub nom. Atl. Cas. Ins. Co. v. Greenwich Ins. Co.*, 548 F. App'x 716 (2d Cir. 2013)).

(Docket No. 62 at 8-9).  *See also Adelman v. State Farm Mut. Auto. Ins. Co.*, 386 A.2d 535, 538 (Pa. Super. 1978) ("A provision of an insurance policy is ambiguous (only) if reasonably intelligent men on considering it in the context of the entire policy would honestly differ as to its meaning.").

Under Pennsylvania law, the determination of whether there is a duty to defend is based on "the factual averments contained in [the underlying] complaint[.]" *Sapa Extrusions v. Liberty Mut. Ins. Co.*, 939 F.3d 243, 249 (3d Cir. 2019).  *See also Holy Ghost Carpatho-Russian Greek Catholic (Orthodox) Church of the Eastern Rite of Phoenixville, Pa. v. Church Mut. Ins. Co.*, 492 F.App'x 247, 249 (3d Cir. 2012) ("[T]he obligation of a casualty insurance company to defend an action brought against the insured is to be determined solely by the allegations of the complaint in the action.") (quoting *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006)); *see also Mut. Ben. Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999) ("The question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint."); *Nationwide Mut. Ins. Co. v. Arnold*, 214 A.3d 688, 695 (Pa. Super. Ct. 2019) ("The insurer's obligation to defend is fixed solely by the allegations in the underlying complaint.").  "If the factual allegations of the complaint on its face comprehend an injury which is actually or potentially within the scope of the policy, the insurer is obligated to defend." *Am. Guarantee & Liab. Ins. Co. v. Law Offices of Richard C. Weisberg*, 524 F. Supp. 3d 430, 454 (E.D. Pa. 2021).

An insurer denying a defense based on a policy exclusion bears the burden of proving that such an exclusion applies. *Downey v. First Indem. Ins.*, 214 F. Supp. 3d 414, 424 (E.D. Pa. 2016) (citations omitted). "If the court determines that the complaint falls within an exclusion, the burden falls upon the insured to show that an exception to the exclusion applies." *Haines v. State Auto*

*Prop. & Cas. Ins. Co.*, 417 F. App'x 151, 153 (3d Cir. 2011) (citing *See N. Ins. Co. of N.Y. v. Aardvark Assocs., Inc.*, 942 F.2d 189, 195 (3d Cir.1991)). In reviewing the allegations contained in the underlying complaint, the allegations must be viewed as true, and be liberally construed in the insured's favor. *Jerry's Sport Center, Inc.*, 2 A.3d at 541.

## V. ANALYSIS

### A. Overview

Nationwide seeks judgment as a matter of law, arguing that it had no duty to defend or indemnify because the Underlying Complaint seeks damages for injuries that arose out of a motor vehicle accident, which is excluded from coverage under the unambiguous language of the Policy's Motor Vehicle Liability Exclusion and related definitions. (Docket Nos. 1 through 1-4). In response, Wadsworth asserts that Nationwide has, "at a bare minimum", a duty to defend him under the Policy, asserts that the Policy fails to provide a definition of motor vehicle liability,[6] challenges the language of the exclusion as ambiguous, and objects to Plaintiff's averment that it precludes coverage arising from the use or operation of any motor vehicle, including one neither owned nor operated by an insured. (Docket No. 62 at 2-7).[7] Defendant asserts, as to the latter, that this reading of the ambiguous language would run afoul of the specification in subclause (1) of the exclusion, which requires ownership of the vehicle by the insured. (*Id*. at 8). In addition to his challenge of Policy ambiguity regarding vehicle ownership, Defendant avers that the underlying claim against him is for "negligent personal acts" - independently covered under the Policy

---

[6] This particular assertion is, as Plaintiff observes, contradicted by both the Policy itself and other portions of Defendant's Brief in Opposition which quote this definition. (Docket No. 65 at 2; *Compare* Doc. No. 62 at 10 *with id.* at 7-8).

[7] "Nationwide argues the auto exclusion precludes coverage for bodily injury arising out of the use or operation of any motor vehicle, even if the vehicle was neither owned nor operated by an insured at the time of the accident. Thus, Nationwide's interpretation is that the auto exclusion precludes coverage for Hall's claims against Wadsworth in the underlying action because those claims seek damages for bodily injuries Hall sustained when he crashed the truck he was operating." (Docket No. 62 at 6) (correctly summarizing Plaintiff's position).

9

provisions and not subject to any preemptive exclusion.  (*Id.* at 10-12).

As set forth in Section III, *supra*, the Policy provides coverage for personal liability arising from a "negligent personal act" of an insured *or* arising from real or personal property "ownership, maintenance or use" by an insured.  The Motor Vehicle Liability provision, however, by its plain language, applies clear exclusions to *each* of these categories of personal liability – it excludes liability arising from an insured's ownership of a "motor vehicle" and it broadly excludes liability arising from other independent categories of potential personal liability involving a "motor vehicle" (including, *e.g.*, acts of "negligent entrustment" or "negligent supervision").

The Court finds, as set forth below, that there is no genuine dispute of material fact that the Underlying Complaint alleges that Hall's fatal injuries tragically arose out of Hall's negligent operation of his automobile, which met the Policy definition of "motor vehicle".  The Court therefore concurs with Plaintiff that under the unambiguous Policy provisions, the negligence liability claimed against Wadsworth in the Underlying Action was excluded from the Personal Liability coverage of Policy Section II by the Motor Vehicle Liability exclusion of bodily injury or property damage "arising from" the operation or use of a "motor vehicle" (as defined by the Policy) "by any person" under subclause (2).

The Court further concludes that the claim in the Underlying Complaint - whether read as one for "common law negligence" or as an allegation of precedent negligent acts of "entrustment" or "delegation" to, or "supervision" of, Hall by Wadsworth - simply does not come within the Policy's personal liability coverage.  Rather, the negligence set forth in the Underlying Complaint - however labeled – is, as a question of Nationwide's obligations under the Policy, inseparable from the negligent operation of Hall's automobile that gave rise to his fatal injuries.  It is, moreover, expressly excluded by the provisions of clause (2) and/or the additional provisions of

subclauses (3) and (4) of the Motor Vehicle Liability exclusion.  Thus, the Court finds that Nationwide is entitled to the declaratory judgment requested.

**B. Discussion**

**1. The Policy's Motor Vehicle Liability Exclusion Applies to the Negligence Claim Against Wadsworth Made in the Underlying Complaint**

The Court concludes that Nationwide is not required to defend Wadsworth because the Policy's Motor Vehicle Liability exclusion applies.  The Underlying Complaint alleges a negligence claim against Wadsworth for the fatal injuries which occurred when Hall, while intoxicated, failed to navigate a high-speed curve and collided with one or more trees.  As noted in the paragraph directly above, the Policy expressly excludes coverage for this claim under subclause (2).

The Court is unpersuaded by Defendant's contention that the Policy language is ambiguous and should therefore be interpreted in Defendant's favor to incorporate – through the recurrent phrase "such vehicle" - a prerequisite of vehicle ownership in each subclause category of motor vehicle liability exclusion.

To the contrary, the clear, commonsense meaning of the word "such" in the repeating phrase "*such* vehicle or craft" is as a limiting adjective (also known as a "determiner"), that is, as a word narrowing down the identity of the nouns which follow by introducing specificity – in this case, by referring back to the things already mentioned and otherwise delineated, *i.e.* such ["motor vehicle", "aircraft", "hovercraft" or "watercraft"] *as each is defined in the Policy*.  In addition, "such" - also commonsensically - carries the contextual meaning of the "motor vehicle" of which we speak, *i.e.*, the motor vehicle which is the *subject of the underlying action* (referred to in Exclusion A as "the involved motor vehicle") and hence the one relevant to the question of the insured's alleged personal liability and policy coverage.

What "such" cannot be commonsensically understood to mean – Defendant's contention notwithstanding – is the motor vehicle *owned by the insured*. Any such reading would render subclause (1) of the Policy's multi-clause definition of the scope of its Motor Vehicle Liability exemption nonsensically redundant:

> Liability for 'bodily injury' or 'property damage' arising out of the:
> (1) *Ownership of* [the vehicle or craft owned by an insured] *by an insured"*

Relatedly, and just as clearly, the plain language of the Policy cannot be read to cabin the entirety of its Motor Vehicle Liability exclusion to those vehicles owned by the insured where ownership is the first of five independent and alternative bases for exclusion. (Docket No. 65 at 4). Moreover, these alternative bases demonstrate the Policy's ability to specify the insured's or third parties' requisite relationship/nexus as to each particular exclusion:

> (2) Maintenance, occupancy, operation, use, loading or unloading of *such* [within the Policy definition and identified in the underlying action] vehicle or craft *by any person*;
>
> (3) Entrustment of *such* vehicle or craft *by an "insured" to any person*;
>
> (4) Failure to supervise or negligent supervision of any person *involving such* vehicle or craft *by an "insured"*; <u>or</u>
>
> (5) Vicarious liability, whether or not imposed by law, for the actions of a child or minor *involving such* vehicle or craft.

(Docket No. 57-3).

None of these alternative bases for exclusion include ownership of the vehicle by the insured. *See* Section III, *supra*; Docket No. 65 at 3.[8] *Cf. Allstate Vehicle & Prop. Ins. Co. v. Scott, 450 F.Supp.3d 230, 238–39 (N.D.N.Y. 2020)* (concluding that motor vehicle exclusion barred coverage of claims in the underlying action as it unambiguously did not require insured "to have

---

[8] As the Court of Appeals for the Third Circuit has observed, a district court cannot "effectively rewrite" a policy to include limitations on an exclusion that could have been, but were not, included therein. *Countryway Ins. Co. v. Slaugenhop*, 360 F. App'x 348, 351 (3d Cir. 2010). *See also id.* (pointing to the presence of "limiting language in other exclusions, coupled with its absence from" the provision in question as demonstrating that insurer "knew how to limit an exclusion . . . when it intended to do so").

any connection (*e.g.*, ownership or use) to the automobile" involved in accident in which underlying action injuries arose); *id.* (agreeing with other courts "that requiring an insured to have some connection with a vehicle for an automobile exclusion to apply would only undermine the purpose of those exclusions, which is to prevent coverage of risk—operating a car—that homeowners' policies are not designed to cover").[9]

**2. The Underlying Action Claim, Whether Named as Common Law Negligence or Negligent Entrustment, Delegation or Supervision, Is Excluded From Coverage Under the Policy**

The Court is also unpersuaded by Defendant's contention that the Policy provides personal liability coverage on the grounds that Wadsworth's conduct (*i.e.*, restoration of car and keys to the visibly intoxicated Hall, in contravention of the police directions Wadsworth represented he would follow) was a "negligent personal act" of an insured, potentially covered under the Policy's Coverage E - Personal Liability, separately and distinctly, and with no applicable exclusion. (Docket No. 62 at 10).

As to the separability of Wadworth's alleged personal negligence from Hall's negligent operation of his motor vehicle, which grounds a coverage exclusion under subsection (2) of the Motor Vehicle Liability exclusion, the Court concurs with the recent analysis of its sister Court for

---

[9] *See also id.* (citing *DMP Contracting Corp. v. Essex Ins. Co.*, 907 N.Y.S.2d 487, 489–90 (1st Dept. 2010) ("The plain meaning of [the automobile exclusion], which focuses on the connection between a vehicle and the injury, not between a vehicle and the insured, is that bodily injury occurring as described is not covered, whether or not it is the insured who owned maintained, used or entrusted to others the subject automobile.") (citing *Allstate Ins. Co. v. Naai*, 684 F. Supp. 2d 1220, 1230–31 (D. Haw. 2010), *aff'd*, 490 F. App'x 49 (9th Cir. 2012); *Ruge v. Utica First Ins. Co*., 819 N.Y.S.2d 564, 564–66 (2d Dept. 2006)); *id.* (noting that automobile exclusions are commonly included because "'using a motor vehicle designed for travel on public roads greatly increases the risk of bodily injury and property damage, and such liability is not within the risk which homeowner's contracts are designed to cover or for which premiums are charged. The risk of liability from the use of a motor vehicle is traditionally and properly covered by motor vehicle policies, not by homeowner's insurance.'") (quoting *Allstate Ins. Co. v. Keillor*, 511 N.W.2d 702, 705–06 (Mich.Ct.App. 1993), *aff'd,* 537 N.W.2d 589 (1995)).

13

the Eastern District of Pennsylvania in *Mapfre Ins. Co. v. Forte*, CV 21-2240-KSM, 2022 WL 1136731, at *6 (E.D. Pa. Apr. 18, 2022).[10]  As that Court cogently observed:

> Pennsylvania courts, and federal courts applying Pennsylvania law, have held that damages arising out of claims of negligent *entrustment* of a motor vehicle, as well as negligent *supervision and training* as to the use of a motor vehicle, are proximately caused by the motor vehicle and, therefore, fall within the motor vehicle exclusion. See, e.g., *Countryway Ins. Co. v. Slaugenhop*, 360 F. App'x 348, 351–52 (3d Cir. 2010) ("Pennsylvania courts interpreting motor vehicle exclusions have . . . consistently rejected attempts to divorce allegations of negligent entrustment from the excluded 'use' of a vehicle that actually causes the plaintiff's injuries . . . . *We believe that the reasoning employed in those cases forecloses [injured party]'s attempts to separate his negligent delegation allegations from the use of the vehicle that actually gave rise to his claims*. Here, [insured's father]'s use of [his own] pickup truck is 'integral' to [injured party]'s allegations against [insured, who directed that his elderly father drive] . . . . *[T]here could be no negligence claim against the insured but for someone's—i.e., [insured's father]'s— 'use' of a motor vehicle*."); *Nat'l Cas. Co. v. Borough of Wyomissing*, 57 F. App'x 62, 66 (3d Cir. 2003) ("Pennsylvania courts have held that [personal liability for] negligent entrustment of an automobile 'arises out of' the ownership or use of the automobile, and other states have held that negligent supervision of the individual driving the automobile arises out of ownership and use. Accordingly, the claim involving failure to promulgate adequate motor vehicle guidelines still alleges an injury which was proximately caused by the motor vehicle and falls within the automobile exclusion."); *City of Williamsport v. CNA Ins. Cos.*, No. 4:19-CV-00170, 2019 WL 2137230, at *2 (M.D. Pa. May 16, 2019) ("[Plaintiff in the underlying action] sought to hold the officer liable for his conduct while driving and the City liable for its supervision and training of the officer. Pennsylvania courts, however, *consider damages arising out of these types of claims as being proximately caused by an automobile*."); cf. *Allstate Prop. & Cas. Ins. Co. v. Filacheck*, Civil Action No. 10-3634, 2011 WL 2111219, at *4 (E.D. Pa. May 25, 2011) ("[T]his is a negligent delegation case in which [insured] allegedly watched Maher become intoxicated, encouraged Maher to drink, and delegated driving duties to him. *Although these acts may well have been negligent and a jury may find [insured] liable, such liability is undeniably intertwined with Maher's use of the vehicle that actually gave rise to the injury. The vehicle Maher drove was both

---

[10] *Forte* involved a motor vehicle liability exclusion containing the same five subclauses as the Policy in the action *sub judice*.  This Court finds that case significantly analogous and that court's analysis and citation persuasive.

> *the instrumentality of the injury and a necessary element in [underlying action plaintiff]'s theories of liability* against both men. Thus, *because [the underlying action's subject] death indisputably 'arose out of the use' of a motor vehicle, any liability-inducing conduct which occurred before such use cannot be divorced from the negligent driving that led to the fatal car accident*.").

*Forte,* 2022 WL 1136731 at *6 (emphasis added) (finding that "any liability inducing conduct" - such as insured's negligence in supervising or training the operator of the involved vehicle or entrusting such vehicle to the operator's care - that occurred before the accident giving rise to injuries, fell within the motor vehicle exclusion, as inseparable from the negligent driving which proximately caused the damages) (citing *Filacheck,* 2011 WL 2111219, at *4).[11] *See also Wolfe v. Ross*, 115 A.3d 880, 889, *appeal* granted in part, 125 A.3d 408 (2015) (finding no ambiguity in "policy language exclud[ing] coverage for injuries arising out of use of a motor vehicle" where it was undisputed that use of vehicle was both proximate cause and cause in fact of injury); *Michigan Mutual v. Sunstream*, 315 N.W.2d 154 (Mich. 1981) (finding exclusion applicable and noting that "liability giving rise to the tort is not actually triggered until the motor vehicle is used in a negligent manner giving rise to injury"). *Cf.* Docket No. 59 at 7 (asserting that Policy provisions broadly and unambiguously exclude coverage for personal liability arising from the use of a "motor vehicle" by anyone).[12]

---

[11] *Cf.* Docket No. 65 at 4 ("Wadsworth emphasizes that the cause of action alleged against him in the Underlying Complaint is labeled 'negligence,' and not 'negligent entrustment.' However, the labeling of the cause of action is immaterial to the question of whether Nationwide owes Wadsworth a duty to defend.") (citing *Mut. Ben. Ins. Co. v. Haver,* 725 A.2d 743, 745 (Pa. 1999) ("[T]he particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint.")). *Cf. also Scott,* 450 F.Supp.3d at 237 ("[A]ct giving rise to liability, rather than the theory of liability alleged, determines whether an insurance policy exclusion applies.") (citing *Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd*., 668 N.E.2d 404, 406–07 (N.Y. 1996)).

[12] As cited in *Forte, supra*, in 2010 the Court of Appeals for the Third Circuit held (albeit in a non-precedential opinion) that "the reasoning employed in [negligent entrustment] cases forecloses [the separation of] negligent delegation allegations from the use of the vehicle that actually gave rise to [the underlying] claims". On appeal, the District Court's finding that the policy was ambiguous was reversed and remanded with instruction, and the Third Court concluded that, as a matter of law, the policy excluded *all coverage* for liability imposed by law as a result of the operation/use of a motor vehicle by anyone (*e.g.*, without regard to ownership or use by the insured or negligence

15

This Court further concurs with the *Forte* Court's additional explication of its holding:

> Moreover, the Policy unambiguously excludes coverage for bodily injury arising out of negligent entrustment and negligent supervision of a motor vehicle. (See Doc. No. 1-4 at 15 (defining 'motor vehicle liability' to include 'liability for "bodily injury" ... arising out of ... entrustment of such vehicle or craft by an "insured" to any person [and] failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"'; . . . .) *See Filacheck*, 2011 WL 2111219, at *4 ("Moreover, even if Ung's allegations against Filacheck could be so neatly separated from her claims against Maher, Filacheck's insurance policy also excludes coverage for bodily injury arising out of the negligent supervision of any person arising from the use of any motorized land vehicle. Because the [ ] Policy unambiguously excludes coverage for injuries which arise out of the use of a motor vehicle, or the supervision of another's use of a motor vehicle, Ung's negligence claims against Filacheck fail to support a recovery that would be covered by the Policy. [Insurer] therefore has no duty to defend Filacheck in the underlying action.").

*Forte,* 2022 WL 1136731 at *7.[13] *Cf. Scott*, 450 F.Supp.3d at 240 ("[E]ven if the Court were to conclude that [underlying action] claims do not fall within the Motor Vehicle Exclusion, the

---

label). 360 F. App'x at 351–53. *But see id.* at 353-54 (Fisher, J., dissenting) (finding exclusion ambiguous and construing it against insurer to provide coverage where claim is for negligent supervision or delegation and distinguishable from negligent entrustment which "connects an insured to the motor vehicle in question" by a "relationship" of "own[ership], control[ ] or employ[ment]".

This Court acknowledges the dissent in *Slaugenhop* on which Defendant apparently draws (without citation), but nonetheless shares the majority's view and that of other courts cited herein – in which the exclusion analysis looks to the relationship between the injuries claimed and the negligent operation of the vehicle (*i.e.*, proximate cause) rather than the relationship between the insured and the vehicle itself. It therefore rejects Defendant's proffered distinction of Count VII's "common law negligence" claim from an excluded underlying claim of "negligent entrustment", in which the insured is the owner of, or otherwise "responsible for the use of" or "in control of", the motor vehicle. (Docket No. 62 at 11-12) (citing *Congini v. Portersville Valve Co*., 470 A.2d 515 (Pa. 1983) (finding that employer host serving alcohol to minor employee during business party at his residence had no such liability for returning vehicle keys to intoxicated minor as he had "no right of control over" said vehicle); *id.* (citing *Congini* for proposition that negligent entrustment is actionable only against "the owner or other person responsible for [the vehicle's] use").

 This Court need not, then, further explore the plausibility of coverage under Defendant's interpretation where an insured is alleged to have been (a) entrusted with the keys to and location of the vehicle of a severely intoxicated acquaintance by Ligonier police offers and (b) delegated responsibility and control as to Hall's supervision and continued restriction from access to/operation of his vehicle until the following morning. *See also* text, *infra*.

[13] *See also* Docket No. 65 at 1, n.1 ("The 'Motor Vehicle Liability' Exclusion also applies because Hall's injuries arose out of: (1) Wadsworth's entrustment of a motor vehicle to Hall; and (2) Wadsworth's failure to supervise or negligent supervision of Hall involving a motor vehicle.")

Negligent Supervision Exclusion bars those claims" where "injuries would not have occurred without the [use of a motor vehicle]")..

In the case *sub judice*, as in *Filacheck* and other cited cases, whatever the sufficiency of Wadsworth's acts (such as entrustment, supervision or delegation) to an underlying claim of negligence, for purposes of this declaratory judgment action that precedent, liability-inducing conduct is intertwined with Hall's negligent operation/use of his motor vehicle, which led to his tragic death.

This Court must thus conclude that, under the plain language of its Motor Vehicle Liability exclusion, the Policy affords an insured no personal liability coverage as to an underlying negligence action for bodily injury "arising from" - *i.e.*, causally connected with - *inter alia*, the maintenance, occupancy, operation or use of a "motor vehicle" by any person; entrustment of a "motor vehicle" by an "insured" to any person; or failure to supervise or negligent supervision of any person involving a "motor vehicle". (Docket Nos. 1-1 and 59 at 5).

### C.  Duty to Indemnify

Unlike the duty to defend, the duty to indemnify "is not necessarily limited to the factual allegations of the underlying complaint"; instead, "there must be a determination that the insurer's policy actually covers a claimed incident." *Sapa Extrusions, Inc.*, 939 F.3d at 250; *see also Hartford Cas. Ins. Co. v. New Hope Healthcare, Inc.*, 803 F. Supp. 2d 339, 344 (E.D. Pa. 2011) (noting that the duty to defend "is interpreted more broadly than the duty to indemnify"). Thus, where the insurer has no duty to defend, it does not have a duty to indemnify. *Atain Ins. Co. v. Basement Waterproofing Specialists, Inc.*, Civil Action No. 20-5440-KSM, 2021 WL 5139903, at *8 (E.D. Pa. Nov. 3, 2021) ("And because we find that there is no duty to defend, there necessarily can be no duty to indemnify."). *See also, e.g.*, *Kvaerner Metals,* 908 A.2d 888, 896 n.7 (Pa. 2006)

("because the duty to defend is broader, a finding that it is not present will also preclude a duty to indemnify."); *Quality Stone Veneer, Inc. v. Selective Ins. Co. of Am.*, 229 F. Supp. 3d 351, 355 n.5 (E.D. Pa. 2017) (same).

## VI.  CONCLUSION

For the foregoing reasons, the Court finds that Nationwide has neither a duty to defend nor a duty to indemnify under the terms of the Policy.  Accordingly, Plaintiffs' pending Motion for Summary Judgment (Docket No. 58) will be granted.

An appropriate declaratory judgment Order will be entered.

By the Court:

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated:  October 1, 2024

cc/ecf:  All counsel of record.